1  Jeremy T. Bergstrom, Esq.
   Arizona Bar No. 19399
2  MILES, BAUER, BERGSTROM & WINTERS, LLP
   2200 Paseo Verde Pkwy., Suite 250
3  Henderson, NV 89052
   (702) 369-5960 / FAX (702) 369-4955
4  File No. 09-92046

5  Attorneys for Secured Creditor,
   DOWNEY SAVINGS & LOAN ASSOCIATION

6

7              UNITED STATES BANKRUPTCY COURT

8              FOR THE DISTRICT OF ARIZONA

9  In re:                              Chapter 13

10 RUSTOM ALI AND JAHAN FERDOUS,       Case No.: 2:09-bk-03236-GBN

11          Debtors.

12 DOWNEY SAVINGS & LOAN
   ASSOCIATION,

13
                Movant,
14
                vs.
15
   RUSTOM ALI AND JAHAN FERDOUS,
16 Debtors; EDWARD J. MANEY, Trustee,

17          Respondents.

18

   **MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
19
        DOWNEY SAVINGS & LOAN ASSOCIATION, its assignees and/or successor in
20
   interest ("Secured Creditor" herein), moves this Court for an Order terminating the Automatic
21
   Stay so that Secured Creditor (and its Trustee) may commence and continue all acts necessary to
22
   foreclose under the Deed of Trust secured by Debtors' property, generally described as 4639
23
   East La Miranda Way, Phoenix, AZ 85044 ("Property" herein).
24

                                    1

There is currently a second Trust Deed upon the Property in favor of and/or serviced by BAC HOME LOANS LP / COUNTRYWIDE, securing a Promissory Note in an unknown original amount. The present unpaid principal balance of said Note is $100,786.00 as listed on Schedule D-Creditors Holding Secured Claims of the Debtors' Schedules. Attached hereto as Exhibit "A" is a copy of Schedule D-Creditors Holding Secured Claims of the Debtors' Schedules. Secured Creditor will seek leave of Court to specify the amount of delinquency thereon at the time of Hearing.

Secured Creditor will seek leave of Court to specify any further encumbrances against the subject Property at the time of trial/preliminary hearing.

Secured Creditor alleges the value of the Property to be approximately $310,000.00 based upon a Broker's Market Valuation/Price Opinion executed on June 11, 2009. Attached hereto as Exhibit "B" is a copy of the Broker's Market Valuation/Price Opinion.

Secured Creditor alleges that there is no/insufficient equity with respect to the subject Property, that Secured Creditor is not adequately protected and that cause exists, in that Secured Creditor is not receiving its regular monthly payments, and/or that it would be unfair and inequitable to delay Secured Creditor in the foreclosure of Secured Creditor's interest in the subject Property. 11 U.S.C. Section 362(d).

Secured Creditor is also entitled to attorney's fees and costs under the Note and Deed of Trust securing Secured Creditor's claim, or alternatively under 11 U.S.C. 506(b) and such other relief as the Court deems just and proper.

///

///

///

///

2

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## STATEMENT OF FACTS

3

### I

4      This Secured Creditor is the servicer and/or beneficiary of a Promissory Note dated

5    January 15, 2004, in the principal amount of $247,000.00, which is secured by the above-

6    referenced Deed of Trust.  Copies of said Note and Deed of Trust are attached hereto as Exhibits

7    "C" and "D" and by this reference incorporated herein.

8      On or about February 25, 2009, Debtors commenced the current Chapter 13 Bankruptcy

9    proceeding in this Court.

10      The Debtors' total arrearages are broken down on the Supplemental Declaration by the

11    Secured Creditor on file herein.

12      Secured Creditor has elected to initiate foreclosure proceedings on the subject property

13    with respect to the subject Trust Deed.  However, Secured Creditor is precluded from proceeding

14    to publish the necessary notices and commencing said foreclosure action during the pendency of

15    this Bankruptcy.

16

17
### SECURED CREDITOR IS ENTITLED
### TO RELIEF FROM THE AUTOMATIC STAY
18
### FOR "CAUSE" UNDER 11 U.S.C. SECTION 362(d)(1)

19

### II

20    11 U.S.C. Section 362(d) provides:

21    " (d) On request of a party in interest and after notice and a hearing, the court
shall grant relief from the stay provided under subsection (a) of this section, such
22    as by terminating, annulling, modifying, or conditioning such stay –

23        (1) for cause, including lack of adequate protection of an interest in
property of such party in interest; or ..."

24

1    Subsection (1) of 11 U.S.C. Section 362(d) allows the court to grant relief from the

2    automatic stay for "cause." A debtor's failure to make post-petition mortgage payments as they

3    become due in a Chapter 13 case constitutes "cause" for relief from the automatic stay pursuant

4    to Section 362(d)(1). In re Ellis, 60 B.R. 432 (9th Cir. 1985).

5    In the instant case, the Debtors' Chapter 13 Plan provides for payment of post-petition

6    regular monthly payments directly to Secured Creditor. Debtors are in default to Secured

7    Creditor for post-petition payments, and "cause" is therefore present justifying relief from stay.

8

9    WHEREFORE, Secured Creditor prays judgment as follows:

10   (1)    For an Order granting relief from Automatic Stay, permitting Secured Creditor to

11   move ahead with Foreclosure proceedings under Secured Creditor's Trust Deed, and to sell the

12   subject Property at a Trustee's Sale under the items of said Trust Deed including necessary

13   action to obtain possession of the Property.

14   (2)    For an Order waiving the 10-day stay provided by Bankruptcy Rule 4001(a)(3).

15   (3)    That Creditor's proof of claim is allowed in the amount of payments made to date

16          by the Trustee and the balance of the secured claim be withdrawn.

17   (4)    For an Order binding and effective despite any conversion of this bankruptcy case.

18   (5)    For such other relief as this Court deems appropriate.

19                      MILES, BAUER, BERGSTROM & WINTERS, LLP

20   Dated:    June 19, 2009        By:    /s/ Jeremy T. Bergstrom, Esq.
                                           Jeremy T. Bergstrom, Esq.
21                                         Attorney for Secured Creditor

22   09-92046/azmrs.dot/mlb

23

24

4

# Exhibit A

B6D (Official Form 6D) (12/07)

In re **Mohammad Rustom Ali,**      Case No. __2:09-bk-03236__
     **Jahan Ferdous**
                      Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS - AMENDED

    State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

    List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

    If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

    If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

    Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | Codebtor | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | Contingent | Unliquidated | Disputed | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W J C | | | | | | | |
| Account No. 96688940 <br><br> **Bac Home Lns Lp/Ctrywd** <br> **450 American St** <br> **Simi Valley, CA 93065** | C | | | Opened 3/10/05 Last Active 12/01/08 <br><br> **Second Mortgage** <br><br> 4639 E. La Mirada Way, Phoenix, Arizona 85044 <br><br> Value $      372,000.00 | | | | 100,786.00 | 0.00 |
| Account No. 200026155 <br><br> **Bayview Financial Loan** <br> **4425 Ponce De Leon Blvd** <br> **Coral Gables, FL 33146** | | H | | Opened 6/28/08 Last Active 1/01/09 <br><br> **First Mortgage** <br><br> **1968 Mesquite Avenue, Lake Havasu, Arizona 86403 - Residential home being renovated for use as a school or daycare center. No tenants.** <br><br> Value $      100,000.00 | | | | 133,219.00 | 33,219.00 |
| Account No. 9040521288 <br><br> **Downey Savings & Loan** <br> **3501 Jamboree Rd Ste 410** <br> **Newport Beach, CA 92660** | C | | | Opened 1/29/04 Last Active 6/30/08 <br><br> **First Mortgage** <br><br> 4639 E. La Mirada Way, Phoenix, Arizona 85044 <br><br> Value $      372,000.00 | | | | 246,555.00 | 0.00 |
| Account No. <br><br> **Saul Diskin** <br> **C/O Osborn Maledon, PA** <br> **2929 N. Central Ave, 21st Floor** <br> **Phoenix, AZ 85012** | C | | | **First Mortgage** <br><br> **125 E. McDonald Road, Phoenix, AZ, 85004 - Gas Station that is Mr. Ali's sole source of income.** <br><br> Value $      300,000.00 | | | | 345,000.00 | 45,000.00 |

**0**    continuation sheets attached

| | Subtotal <br> (Total of this page) | 825,560.00 | 78,219.00 |
|---|---|---|---|
| | Total <br> (Report on Summary of Schedules) | 825,560.00 | 78,219.00 |

Copyright (c) 1996-2009 - Best Case Solutions - Evanston, IL - (800) 492-8037

# Exhibit B

# REALServ, Inc.

## BROKER'S MARKET VALUATION/PRICE OPINION

**Loan #** 9040521288     **Mortgagor Name:**     ALI, RUSTOM

**Property Address** 4639 East La Mirada Way
Phoenix, AZ 85044

|  | **30 DOM**<br>**Quick Sale** | **90 DOM**<br>**As-Is Market Value** | **90 DOM**<br>**Repaired Market Value** |
|---|---|---|---|
| Suggested List Price | $295,000.00 | $310,000.00 | $310,000.00 |
| Estimated Sales Price | $285,000.00 | $300,000.00 | $300,000.00 |
| Estimated Market Time | 30 | 60 | 60 |

Property should be Listed:Home needs to be priced aggressively to avoid the slow market and force a sale. Home is located in a very desireable area and the right marketing and price will get a quick sale. .

Location: Suburban

View: Golf Course

## SUBJECT PROPERTY:

| Property Type | Condition | Sq Ft | BR's/BA's | Lot Size | Garage | Age | Basement | A/C | Heating |
|---|---|---|---|---|---|---|---|---|---|
| SFR Detached | Average | 2778 | 4/3 | 10000 | 3 Car Garage | 1994 | None | Heat Pump(s) | Heat Pump |

Is property currently listed? No

Is Property Vacant? No     HOA Name: Estates at the Pointe South Mountain

| Annual Taxes | $3,252.90 | Delinquent Taxes | $0.00 |
|---|---|---|---|

## Neighborhood Description:

Neighborhood Trend: Declining

Neighborhood Characteristics: Busy Street / Road Noise

Type of Market: Owner Occupied

Is there new construction nearby? No

Price Range: $189,000.00 to $699,000.00

Describe any neighborhood factors that would have an effect on the value of the subject:

Home is part of a resort development called the Pointe at South Mountain. Home borders the golf course for what is currently called the Arizona Grand Resort. It borders Phoenix South Mountain municipal park which provides mountain views. No similar comps within this development could be located. Search was expanded to zip code in which the subject resides with home square footage range of +/- 12% taken into account.

## COMPARABLE SALES (Minimum of 3 required- use closest and most recent properties) Include any concessions paid.

| Address | Cond. | Proximity | Sq Ft | BR's/BA | Lot Size | Gar | Age | Sale Date | DOM | Sale Price | Basement/% Finished |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4042 E. Agave Rd. Phoenix, AZ 85044 | Average | 5.23 | 2625 | 4/3 | 7500 | 2 Car Garage | 1997 | 3/19/2009 | 46 | $279,000.00 | None |
| 14035 S. 45TH St. Phoenix, AZ 85044 | Average | 4.56 | 2651 | 4/3 | 10000 | 3 Car Garage | 1994 | 5/20/2009 | 224 | $399,900.00 | None |
| 4401 E. | | | | | | | | | | | |

© 2004 - 2009 Quandis, All Rights Reserved. http://www.quandis.com

| Mountain Sage Dr. Phoenix, AZ 85044 | Good | 4.76 | 2652 | 5/3 | 10000 | 3 Car Garage | 1994 | 4/20/2009 | 13 | $407,000.00 | None |
|---|---|---|---|---|---|---|---|---|---|---|---|

**COMPARABLE LISTINGS** (Minimum of 3 required- use closest and most recent properties) Include any incentives offered.

| Address | Cond. | Proximity | Sq Ft | BR's/BA | Lot Size | Gar | Age | DOM | Current List Price | Original List Price | Basement/% Finished |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4031 E. Agave Rd. Phoenix, AZ 85044 | Average | 5.25 | 2626 | 4/3 | 7500 | 3 Car Garage | 1997 | 134 | 339,900.00 | 339,900.00 | None |
| 4611 E. Verbena Dr. Phoenix, AZ 85044 | Good | 5.42 | 2652 | 4/3 | 7500 | 3 Car Garage | 1996 | 161 | 335,000.00 | 350,000.00 | None |
| 15204 S. 40TH Pl. Phoenix, AZ 85044 | Average | 6.21 | 2739 | 4/3 | 7500 | 3 Car Garage | 1993 | 174 | 350,000.00 | 350,000.00 | None |

Broker's Office Proximity to Subject Property: 3.22 miles

Broker Firm Name: O'Neal, Jack      Preparer: O'Neal, Jack on 6/11/2009

Phone Number: (602)418-3645      Email Address: jack@jackoneal.com

Prepared By: O'Neal, Jack      Date: 6/11/2009

## PHOTOS

Loan Number: 9040521288

Property Address: 4639 East La Mirada Way

City: Phoenix      State: AZ      Postal Code: 85044

### Subject Property

© 2004 - 2009 Quandis, All Rights Reserved. http://www.quandis.com

# Exhibit C





# ADJUSTABLE RATE NOTE

**(LIBOR Six-Month Index (As Published in *The Wall Street Journal*) - Rate Caps)**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| January 15, 2004 | KINGMAN | AZ |
|---|---|---|
| [Date] | [City] | [State] |

4639 EAST LA MIRANDA WAY, Phoenix, AZ 85044

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 247,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Downey Savings and Loan Association, F.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.950% beginning with my first monthly payment. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay a monthly payment of accrued interest only for the first 60 months of this loan by making a payment every month. Beginning on the 61st month, I will pay principal and interest by making a payment every month thereafter.

I will make my monthly payments on the first day of each month beginning on     March 1, 2004

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on     February 1, 2034     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 3501 Jamboree Rd, Newport Beach, CA 92660 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $     813.04     . This amount may change.



MULTI STATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN *THE WALL STREET JOURNAL*) - Single Family

A106N1.UFF (02/11/03) 12040 VC

Page 1 of 4     Initials: _____

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of August, 2004 , and on that day every six months thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 30 days before each Change Date is called the "Current Index."

If the index is no longer available, or is no longer Published, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding three percentage points (3.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (.125%). Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 4.950 % or less than 2.950 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percent (1%) from the interest I have been paying for the preceding six months. My interest rate will never be greater than 11.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If I make a partial Prepayment during the first sixty (60) months of this loan, my monthly payments due for the remaining potion of this sixty (60) month period will not change as a result of my Prepayment, but a portion of my monthly payments after my partial Prepayment may reduce the Principal. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.



A106N2.UFF (02/11/03) 12040 VC        Page 2 of 4        Initials:

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        Fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be            5.000                       % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

A105N3.UFF (02/11/03) 12040 VC            Page 3 of 4            Initials: _Dal_

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)      _____ (Seal)
                                      -Borrower                                                                                         -Borrower
**RUSTOM ALI**

_____ (Seal)      _____ (Seal)
                                      -Borrower                                                                               -Borrower

_____ (Seal)      _____ (Seal)
    -Borrower      -Borrower

_____ (Seal)      _____ (Seal)
    -Borrower      -Borrower

[Sign Original Only]

A106N4.UFF (02/17/03) 12040 VC

Page 4 of 4

Initials: _____

# Exhibit D

Return To:
Downey Savings and Loan
Association, F.A.
P.O. Box 6060, 3501 Jamboree
Rd, Newport Beach, CA
92658-6060

Prepared By:

Downey Savings and Loan
Association, F.A.
P.O. Box 6060, 3501 Jamboree
Rd, Newport Beach, CA
92658-6060

*CERTIFIED THAT THIS IS A TRUE & CORRECT COPY OF THE ORIGINAL*

*Tammy J. Valandingham*

———————[Space Above This Line For Recording Data]———————

# DEED OF TRUST

Title Order No.: 00392605-001
Escrow No.: 00392605-001
APN: 301-41-742

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated January 15, 2004
together with all Riders to this document.
(B) "Borrower" is RUSTOM ALI, A Married Man as his sole and separate property

Borrower is the trustor under this Security Instrument. Borrower's mailing address is 4639 EAST LA
MIRANDA WAY , Phoenix, AZ 85044
(C) "Lender" is Downey Savings and Loan Association, F.A.

Lender is a federally chartered savings association
organized and existing under the laws of the United States of America

ARIZONA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3003  1/01 (rev. 6/02)

Ⓥ -6(AZ) (0208)
Page 1 of 15                    Initials: *Rah*

VMP MORTGAGE FORMS - (800)521-7291

Lender's mailing address is 3501 Jamboree Road, Newport Beach, CA 92660

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is DSL Service Company, A California Corporation
. Trustee's mailing address is

3501 Jamboree Road, Newport Beach, CA 92658-6000

(E) "Note" means the promissory note signed by Borrower and dated January 15, 2004
The Note states that Borrower owes Lender two hundred forty-seven thousand and 00/100
                                                                                    Dollars
(U.S. $247,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than February 1, 2034
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [x] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [x] Planned Unit Development Rider | [x] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [x] Other(s) [specify] |

**Rider to Promissory Note and Security Instrument**

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

Initials: [signature]          Form 3003 1/01 (rev. 6/02)

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| County | of | Maricopa | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

LOT 25, THE ESTATES AT THE POINTE SOUTH MOUNTAIN, ACCORDING TO BOOK 355 OF MAPS, PAGE 22, RECORDS OF MARICOPA COUNTY, ARIZONA.

Parcel ID Number: 301-41-742

4639 EAST LA MIRANDA WAY

Phoenix

("Property Address"):

which currently has the address of

[Street]

[City], Arizona 85044      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items

VMP®-6(AZ) (0206)                    Page 3 of 15          Initials          Form 3003   1/01 (rev. 6/02)

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall record a notice of sale in each county in which any part of the Property is located and shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. After the time required by Applicable Law and after publication and posting of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at the time and place designated in the notice of sale. Trustee may postpone sale of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the county treasurer of the county in which the sale took place.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Substitute Trustee.** Lender may, for any reason or cause, from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Time of Essence.** Time is of the essence in each covenant of this Security Instrument.

Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                                       _____ (Seal)
                                                           RUSTOM ALI                      -Borrower

_____                     _____ (Seal)
                                                               -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                         -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                         -Borrower

STATE OF ARIZONA,                                                    County ss:

   The foregoing instrument was acknowledged before me this January 23, 2004
by RUSTOM ALI

> OFFICIAL SEAL
> JULIE ENRIQUEZ
> NOTARY PUBLIC – ARIZONA
> My Comm. Expires March 6, 2007

My Commission Expires:

_____
Notary Public

Initials: _____  Form 3003  1/01 (rev. 6/02)